In regard to the note for six hundred and seventy-eight dollars and forty-three cents assigned to the claimant by the Union Central Life Insurance Company, I find from the evidence that two hundred and twelve dollars of that amount was for premium on the life policy issued to the claimant, and that the residue was for premium on the policy issued to the bankrupt; that the claimant gave to his father two hundred and twelve dollars in money, which he kept and used, and settled with the company by giving his note for the whole, which note was afterwards taken up by the claimant and proved by him as a claim against his father's estate.

In regard to the exemption of five hundred dollars, allowed to the bankrupt in lieu of a homestead, I find that there is no testimony impeaching his right to receive the same from the assignee, and he will accordingly be directed to pay the same.

In regard to the right of the claimant to prove his whole debt, the following is the provision of the amendatory act of June 22, 1874:

"Sec. 12. Provided, that the person receiving such payment or conveyance had reasonable cause to believe that the debtor was insolvent, and knew that a fraud on this act was intended, and such person, if a creditor, shall not, in cases of actual fraud on his part, be allowed to prove for more than a moiety of his debt, and this limitation on the proof of debts shall apply to cases of voluntary as well as involuntary bankruptcy."

I have already found from the evidence that when he received the payment of two thousand dollars, the claimant had reasonable cause to believe that his father was insolvent, and knew that a fraud on this act was intended; the conclusion necessarily follows that he can be permitted to prove but a moiety of his debt. Having proved for the whole, the proof must be diminished so as to comply with the law. Unless he shall voluntarily return his preference to the assignee, his claim will stand as follows:

Amount of note .................. $9,500 00
Amount of his third claim......... 22 47

Total ......................  $9,522 47
Deduct for error.................   150 00

Total ......................  $9,372 47

Of which a moiety is four thousand six hundred and eighty-six dollars and twenty-three and one-half cents, to which extent his claim will be diminished. The claim for six hundred and seventy-eight dollars and forty-three cents on the insurance note is valued for its face, and the petition for its re-examination will be dismissed. The claim of the bankrupt for five hundred dollars, as an exemption in lieu of a homestead, will be ordered paid by the assignee.

NOTE. On the 27th of February, 1877, and before the expiration of the time limited by general order 34, for forming an issue to be certified to the court for determination, the claimant filed a petition expressing his acquiescence in the foregoing opinion, and voluntarily offering to restore to the assignee the preference which he had received. Whereupon, there being no actual but only a constructive fraud, I directed the assignee to receive the same, with interest from April 1, 1876, and that the penalty imposed upon the claimant be remitted, and that he be allowed to share in common with the other general creditors in all dividends declared or to be declared. Flamen Ball, Register.

SCHOFIELD (DENSMORE v.).    See Case No. 3,809.

## Case No. 12,474.
### SCHOLFIELD v. FITZHUGH.
[1 Cranch, C. C. 108.] [1]

Circuit Court, District of Columbia. Dec. Term, 1802.

PLEADING AT LAW—AMENDMENT—CHANGE OF ACTION.

The court will not give leave to amend by changing the action from case to covenant.

Motion to amend by changing the writ from case to covenant.

No declaration nor cause of action was filed at the time of issuing the writ, which was ordered, by the plaintiff's counsel, to be in case.

THE COURT refused leave so to amend, because it was changing the question, and not simply bringing its merits fairly before the court.

KILTY, Chief Judge, contra.

The same point was also decided in the case of Nicholls v. Harrison [Case No. 10,229], at the same term.

SCHOLFIELD (ROUNSAVEL v.).    See Case No. 12,085.

SCHOLFIELD (SWANN v.).    See Case No. 13,676.

SCHOLFIELD (TAYLOR v.).    See Case No. 13,804.

## Case No. 12,475.
### SCHOLFIELD et al. v. UNION BANK.
[2 Cranch, C. C. 115.] [1]

Circuit Court, District of Columbia. Nov. Term, 1815.

BANKS—STOCKHOLDERS—ELECTION OF DIRECTORS—WHO MAY VOTE.

A stockholder of a bank, who has pledged his stock to the bank as collateral security for the payment of his notes not yet due, has a right to vote as a stockholder at an election of directors.

[Cited in Clarke v. Central Railroad & Banking Co., 50 Fed. 343.]

[Cited in Hoppin v. Buffum, 9 R. I. 515.]

An injunction had been granted to stay the election of directors of the Union Bank of Alexandria, upon the refusal of the committee of election to permit those stockholders to vote

[1] [Reported by Hon. William Cranch, Chief Judge.]

whose stock was pledged to the bank as collateral security for notes not yet payable.

THE COURT confirmed the principle upon which the injunction was granted.

———

SCHOLFIELD (UNITED STATES v.). See Cases Nos. 16,230 and 16,231.

———

### Case No. 12,475a.

SCHOLLENBERGER v. FORTY-FIVE FOREIGN INSURANCE COMPANIES.

[5 Wkly. Notes Cas. 405.]

Circuit Court, E. D. Pennsylvania. April 13, 1878.

COURTS — FEDERAL — FOREIGN CORPORATIONS — PROPER DISTRICT—WRITS—JURISDICTION—MANDAMUS.

1. The language of the act of congress of March 3, 1875 (18 Stat. 470), re-enacted from the judiciary act of 1789 (1 Stat. 79, § 11), that "no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving such process or commencing such proceedings," etc., is complied with where the defendant is a foreign corporation doing business within the state in which the United States district is situated, and process has been served upon it through its local agent in said district, appointed under a state statute requiring the foreign corporation defendant to have such resident local agent before doing business in the state, on whom service of process for the company may be had.

2. A foreign corporation, for the purpose of service of original process upon it, may be "found within" the limits of another sovereignty than that in which it was incorporated.

3. A foreign corporation is "found within" another state when it transacts its ordinary business within the latter state, and has there a local agent on whom, by the state law, original process may be served.

4. Although state legislation cannot confer jurisdiction upon United States courts, and consent of parties cannot, yet both combined may. Thus, where a foreign corporation consents to the condition of a state law, viz. to be found within the state for the service of process, the fact that it is so found gives the jurisdiction. The proviso in the act of congress prescribing where a defendant may be sued is not one affecting the general jurisdiction of the federal courts. It is rather in the nature of a personal exemption in favor of a defendant which, if the citizenship of the parties is sufficient, he may waive.

5. A state law of Pennsylvania prescribed that foreign corporations doing business therein should submit themselves to service of process issuing out of "any court of this commonwealth having jurisdiction of the subject-matter." Held, that the circuit court of the United States in Pennsylvania, having jurisdiction of the subject-matter, was within the purview of the act.

6. Mandamus is the proper remedy where the United States circuit court refuses to entertain jurisdiction by quashing the service of the original process.

7. Semble, that, on a rule for a mandamus, the United States supreme court will only look at the petition and return, and not at the record

of the cases in the lower court referred to in the petition. La Fayette Ins. Co. v. French, 18 How. [59 U. S.] 407, and Railroad Co. v. Harris, 12 Wall. [79 U. S.] 81, approved and followed.

These were 45 actions of debt on policies of fire insurance, brought by William Schollenberger & Son, citizens of Pennsylvania, against the defendants, who were, respectively, corporations incorporated either by the parliament of Great Britain or by states other than Pennsylvania. Writs of summons, issued in this court, returnable to the first Monday of April, 1878, were duly served by the United States marshal for this district upon the person who, for the time then being, was, in each case, the agent of the respective defendant, and who had been, and was then, appointed by the said defendant as its agent, resident in Pennsylvania, under the acts of assembly of April 11, 1868, § 2 (P. L. 1868, p. 83; Purd. Dig. 796, pl. 29), and of April 4, 1873 (P. L. 1873, p. 27). Declarations were at the same time filed, in which the plaintiffs were described as citizens of the state of Pennsylvania, and each defendant as "a body corporate, created under the laws of [the proper state], and having its principal place of business in said state, and being a body corporate exercising, within the state of Pennsylvania, under a license granted by said state, their corporate rights, powers, and privileges, in the making of contracts of insurance, such as that on which this action is brought." The declarations showed that the contracts of insurance sued upon were in each case made in this district, insuring property situated here, between the plaintiffs and the respective defendants, acting by their local agents, who in each case were served. An appearance de bene esse was in each case entered for the agent, as an individual, upon whom service had been made, but not for the defendant corporation. Motions were thereupon made to quash the service of the writs in all the cases. The motion in one of the cases was, for special reasons, overruled. Schollenberger v. Phœnix Ins. Co. [Case No. 12,-476].

James H. Heverin and R. P. White, for the motions. (Their argument is fully stated in the opinion of McKENNAN, Circuit Judge, by whom it was substantially adopted.)

A. Sydney Biddle and Mr. McMurtrie, contra.

It is a general rule of jurisprudence that the defendant must be within the territorial jurisdiction of the sovereign from whose court the original process issues, in order that service may be made upon him. The defendant must have his day in court, and unless he has this, the judgment is void, except so far as the proceeding was in rem, and it is then good only to the extent of the res brought under the control of the judgment of the court by the original proceeding. Pennoyer v. Neff, 95 U. S. 714. If, then, a court entertains jurisdiction of a suit in personam where the defendant has